Matthew C. Williams (Idaho State Bar No. 6271)
Valley County Prosecuting Attorney
P. O. Box 1350
Cascade, ID 83611
Telephone: (208) 382-7120
Facsimile: (208) 382-7124
mwilliams@co.valley.id.us

David R. Lombardi (Idaho State Bar No. 1965)
Christopher H. Meyer (Idaho State Bar No. 4461)
GIVENS PURSLEY LLP
601 W. Bannock St.
P. O. Box 2720
Boise, ID  83701
Telephone: (208) 388-1200
Facsimile: (208) 388-1300
drl@givenspursley.com
chrismeyer@givenspursley.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| VALLEY COUNTY, IDAHO<br><br>      Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE, an agency of the United States; TOM VILSACK, in his capacity as Secretary of Agriculture of the United States; UNITED STATES FOREST SERVICE, an agency within the Unites States Forest Department of Agriculture; TOM TIDWELL, in his capacity as Chief of the United States Forest Service; HARVEY FORSGREN, in his capacity as Regional Forester for the Intermountain Region of the United States Forest Service; BRENT L. LARSON, in his capacity as Forest Supervisor of the Caribou-Targhee National Forest; and KEITH LANNOM, in his capacity as Forest Supervisor for the Payette National Forest,<br><br>      Defendants. | Civil Action No.  1:11-cv-233<br><br><br>**COMPLAINT** |

Valley County, Idaho ("Valley County" or the "County") complains and alleges as follows:

**PARTIES**

1.   Valley County is a political subdivision of the State of Idaho.

2.   Defendant United States Department of Agriculture ("USDA") is an agency of the United States.

3.   Defendant Tom Vilsack is the Secretary of Agriculture of the United States.

4.   Defendant United States Forest Service ("Forest Service") is an agency within the USDA.

5.   Defendant Tom Tidwell is the Chief of the Forest Service.

6.   Defendant Harvey Forsgren is the Regional Forester for the Intermountain Region of the Forest Service.

7.   Defendant Brent L. Larson is the Forest Supervisor of the Caribou-Targhee National Forest and is the Appeal Deciding Officer in this case.

8.   Defendant Keith Lannom is the Forest Supervisor for the Payette National Forest ("PNF").  Suzanne C. Rainville was previously and at all relevant times, the Forest Supervisor for the PNF and the Responsible Official in this case.

9.   In this *Complaint*, we use the term "PNF" in reference to the governmental unit within the Forest Service with administrative responsibility for the Payette National Forest.  We use the term "National Forest" in geographical reference to the Payette National Forest itself.

10.   Defendants USDA, Tom Vilsack, Forest Service, Tom Tidwell, Harvey Forsgren, Brent L. Larson, and Keith Lannom are referred to collectively herein as "Federal Defendants."

11.     Federal Defendants in this action are the same as the defendants in the preceding action, *American Independence Mines and Minerals Co. v. U.S. Dep't of Agriculture*, No. CV-09-433-S-ELJ (D. Idaho decision and judgment May 12, 2010) (the "Original Action"), which is described below under the heading "PRIOR LITIGATION".

## JURISDICTION AND VENUE

12.     This matter concerns judicial review of (a) the October 3, 2008 *Record of Decision on the Travel Management Plan for Snow-free Season on the McCall and Krassel Ranger Districts of the Payette National Forest* ("ROD") and (b) the January 8, 2009 decision of Brent L. Larson, Appeal Deciding Officer, denying Valley County's appeal of the ROD ("Appeal Decision").

13.     A true and correct copy of the ROD is attached hereto as Exhibit A and incorporated herein by reference.

14.     A true and correct copy of the Appeal Decision is attached hereto as Exhibit B and incorporated herein by reference.

15.     Note that the ROD is referred to in some documents as the "Travel Management Plan" or "TMP." These are different names for the same document.

16.     The ROD and Appeal Decision were issued pursuant to the Forest Service's November 9, 2005 rule entitled *Travel Management; Designated Routes and Areas for Motor Vehicle Use; Final Rule*, 70 Fed. Reg. 68264 to 68291 (Nov. 9, 2005), codified at 36 C.F.R. Parts 212, 251, 261, and 295.70 (2008) ("Travel Management Rule").

17.     Jurisdiction is proper in this Court under 28 U.S.C. § 1331 because this matter arises under the laws of the United States, including without limitation the National Environmental Policy Act of 1969, 42 U.S.C. §§ 4321-4370h ("NEPA"), the National Forest

Management Act of 1976, 16 U.S.C. § 1600-1614 ("NFMA"), and various federal implementing regulations and guidance.

18.     This Court is authorized to review agency actions by the Administrative Procedure Act, 5 U.S.C. §§ 701-706 ("APA").

19.     The APA creates a private right of action for persons aggrieved by final agency action.

20.     The ROD is a final agency action.

21.     The Appeal Decision is a final agency action.

22.     The County has exhausted all administrative remedies.

23.     This case is ripe for judicial review.

24.     This case is not moot.

25.     This Court is the proper venue to hear this matter pursuant to 28 U.S.C. § 1391(e)(2) because a substantial part of the events or omissions giving rise to this lawsuit occurred in this judicial district.

## STANDING AND EXHAUSTION

26.     Valley County and its citizens and residents appreciate and enjoy the environmental, historical, recreational, economic and cultural values of lands and historic sites accessed by roads that have been closed as a result of the ROD.

27.     For many years, citizens, residents, and businesses of Valley County have used roads that are now closed or subject to closure as a result of the ROD.  They have used these roads for a variety of recreational, aesthetic, and business purposes.  Citizens, residents, and businesses of Valley County desire to continue to use these roads and will use them if they remain open.

28.     For a number of years, the County has been actively involved in the management of roads within the National Forest that are used by members of the public in Valley County.  In this regard, Valley County has worked with the PNF, consistent with the concepts of multiple-use and sustained yield, to achieve a management regime that protects the environment by avoiding, minimizing, mitigating, or remediating any negative environmental impacts associated with road use, while also enhancing human welfare through recreation, tourism, industry, commerce, and public and emergency access.

29.     On July 26, 2004, the County commented on the proposed Travel Management Rule.

30.     On July 6, 2007, the County submitted comments to the PNF on the proposed Travel Management Plan and the *Payette National Forest Travel Management Plan Final Environmental Impact Statement* ("Final EIS").

31.     On November 22, 2008, the County filed an administrative appeal of the ROD and Final EIS to Defendant Harvey Forsgren, Regional Forester for the Intermountain Region of the Forest Service.

32.     The County is required by the Local Land Use Planning Act to develop a comprehensive plan that includes all of the land within its jurisdiction (including land within the National Forest) and considers natural resources (Idaho Code § 67-6508(f)) and transportation (Idaho Code § 67-6508(i)).

33.     The County is required by Idaho Code § 40-202(6) to evaluate and publish a map reflecting public road access within its jurisdiction, including roads in that portion of the National Forest lying within Valley County.

34.     The County and the public it represents are adversely affected by the closure of roads and other restrictions imposed by the ROD.

35.     The County and the public it represents are adversely affected by the failure of the ROD to achieve the purposes of NEPA.

36.     Through this litigation, the County seeks to protect and further advance the various environmental, recreational, aesthetic, public safety, economic, and business interests of citizens, residents, and businesses in Valley County who would be and have been affected adversely by the lack of an accurate assessment and disclosure of the existing road network and by the closure of roads within the National Forest resulting from the ROD.

37.     The lack of an accurate assessment of the existing road network and the failure to disclose and consider various environmental and economic impacts has denied the County, the public, the PNF, and other entities the ability to properly and thoroughly analyze the environmental and ecological consequences and the interrelated social and economic consequences of the alteration of travel management procedures.

38.     The County has sustained injury to its legal and other interests arising from and associated with the public's use and enjoyment of the National Forest and roads within the National Forest for which it has no remedy without judicial relief.

39.     Because the County has suffered injury in fact, because there is a direct causal connection between the injury and the challenged conduct, and because the injury is redressable, the County has standing to bring this lawsuit within the meaning of Article III of the U.S. Constitution.

40.     The interests of the County fall within the zone of interest protected and/or regulated by NEPA.

## BACKGROUND ON TRAVEL MANAGEMENT RULE

41.     On November 9, 2005, the USDA and the Forest Service promulgated the Travel Management Rule referenced in paragraph 16.

42.     Prior to the promulgation of the Travel Management Rule, it was the practice within the Forest Service to allow public use with motorized vehicles of all roads that were not affirmatively declared closed to such use by the Forest Service.  No permit, notice, or pre-approval by the PNF was required for such road use.  We refer to this as the "open unless closed" policy.

43.     The PNF's "open unless closed" policy was reflected in the 1988 Payette Forest Plan (formally titled the Payette National Forest Land and Resource Management Plan) issued pursuant to the NFMA.

44.     Travel planning actions undertaken pursuant to the "open unless closed" policy culminated in the release of the 1995 Forest Visitor Map.  The 1995 Forest Visitor Map is also sometimes described as the 1995 Forest Travel Map.

45.     The roads shown on the 1995 Forest Visitor Map were recognized by the PNF as being open to the public for motorized use.

46.     Due to the "open unless closed" policy in effect in 1995, there were roads within the National Forest that were not displayed on the 1995 Forest Visitor Map but were nonetheless physically and legally open to the public.

47.     In 2003, the PNF adopted the 2003 Payette Forest Plan, which revised the 1988 Payette Forest Plan.

48.     The 2003 Payette Forest Plan did not address travel management planning, and left the "open unless closed" rule established by the 1988 Payette Forest Plan in effect.

49.     Until approximately 2006, the PNF issued annual, informal updates of the 1995 Forest Visitor Map.  ROD at page ROD-15 (Exhibit A).

50.     The annual updates referred to in paragraph 50 were called "Backroads Maps." ROD at page ROD-15 (Exhibit A).

51.     A true and correct copy of the cover sheet and a portion of the 2007 Backroads Map is attached as Exhibit C.

52.     Although dated 2007, the 2007 Backroads Map in Exhibit C may have been issued in 2006.  The date, however, is not material.

53.     As described in paragraph116, the 2007 Backroads Map ultimately became the basis for the No Action Alternative in the FEIS (discussed in paragraph108).

54.     Some roads included in the 1995 Forest Visitor Map were deleted from subsequent Backroads Maps, including particularly the 2007 Backroads Map.

55.     The Backroads Maps acknowledged, according to their own terms, that they were incomplete and lack detail concerning roads open for use and actually used by the public at the time of their publication.

56.     For example, the 2007 Backroads Map (Exhibit C) states, "Keep in mind that this publication is only a general guide.  The 1995 Forest Visitor / Travel Map provides more detailed information, such as closed roads, non-motorized trails, lakes and streams.  This BACKROADS publication needs to be used in conjunction with the 1995 Forest Visitor / Travel Map."

57.     The deletion of roads from Backroads Maps, as described above, occurred without any public comment, NEPA review, hearing, or legal process.

58.     Due to the "open unless closed" policy then in effect, the deletion of roads from Backroads Maps, as described above, had no legal effect and did not cause the deleted roads to be legally closed to the public.

59.     The Travel Management Rule changed regulations and practices regarding travel management on National Forest System lands, by, among other things, requiring each national forest to designate a system of roads, trails, and areas that are open to motor vehicle use and by prohibiting the unauthorized use of motor vehicles off the designated system.

60.     The effect of the Travel Management Rule was to replace the "open unless closed" policy with the opposite—a rule providing that roads are "closed unless open."

61.     Under the Travel Management Rule, only designated roads are open to motor vehicle use ("Designated Roads").

62.     The Travel Management Rule prohibits and criminalizes public motorized use of any road within that national forest that is not a Designated Road (with a single exception for certain "legally documented" roads not relevant to this Complaint).  36 C.F.R. §§ 212.50(a), 261.13(i)(1).

## ADMINISTRATIVE BACKGROUND

63.     In February 2006, the PNF issued the *Payette National Forest Travel Management Plan Draft Environmental Impact Statement* ("Draft EIS").

64.     The Draft EIS purported to analyze the environmental effects of revising the then existing PNF travel management policies and designating a system of roads, trails, and areas open to motorized and non-motorized use on the portion of the National Forest outside the Frank Church-River of No Return Wilderness.

65.    The PNF issued the Final EIS in April or May 2007.  (The date on the cover differs from the date in the Abstract.)

66.    The Draft EIS contained four alternatives.  The Final EIS contained those four alternatives plus a fifth alternative ("Alternative E") that was developed based on internal and external comment on the Draft EIS.

67.    The Final EIS designated Alternative E as the preferred alternative.

68.    A public comment period for the Final EIS was opened to allow comment on the new Alterative E.  The public comment period began on May 25, 2007.  The original 30-day deadline was later extended to July 6, 2007 and extended again to July 10, 2007.

69.    As noted in paragraph 30, the County submitted comments on the Final EIS on July 6, 2007.

70.    On October 3, 2008, Susan C. Rainville issued the ROD.

71.    The ROD adopted and implemented a variation of Alternative E.

72.    The ROD contained a map to illustrate the decision, but stated that the decision would not be implemented until the PNF issued the McCall and Krassel Ranger Districts Motor Vehicle Use Map ("the MVUM").  This is consistent with 36 C.F.R. § 261.13 which ties the prohibition on road use to the MVUM.

73.    This issuance of the MVUM was a ministerial action not involving further evaluation, judgment, or NEPA review.

74.    The MVUM was issued on or about July 20, 2009.

75.    The MVUM is consistent with the ROD in terms of its identification of Designated Roads.

76.     When issued, the MVUM had the effect of closing and criminalizing the public use of multiple roads within the National Forest which were used by the County and the public it represents.  Illustrative examples of closed roads are described in paragraph119.

77.     On November 22, 2008, the County filed an administrative appeal of the ROD and Final EIS.

78.     On January 8, 2009, Brent L. Larson, the Appeal Deciding Officer and current Forest Supervisor for the Caribou-Targhee National Forest, issued the Appeal Decision.  The Appeal Decision denied the County's appeal.

79.     The Appeal Decision constitutes the final agency action of the USDA, the Forest Service, and the PNF under 36 C.F.R. § 215.18(c).

80.     On August 13, 2009, Defendants published a "description of the proposed action for the Big Creek / Yellow Pine travel plan (snow-free season( and Big Creek Ford project" advising the public of its intent to conduct a public planning process by which to manage summer recreational access to the PNF in the area of Big Creek and Yellow Pine.  In effect, this constituted a notice of intent of proposed agency action.  This proposed action was initiated by Defendants in furtherance of the Appeal Decision on the ROD.

81.     In April 2010, Defendants published an Environmental Assessment (herein the "EA") with respect to the August 2009 proposed action.  The EA contained a total of three (3) distinct alternatives to be analyzed in detail, including the legally-required "no action" alternative.  Alternative A, the "no action" alternative, would maintain the system of roads, trails, and areas open to motorized vehicles as designated by the ROD.

82.     A FONSI was released on April 26, 2010.  The FONSI adopted Alternative A identified in the EA – the so-called "no action alternative."

83.     Valley County timely appealed the FONSI under 36 C.F.R. part 215.

84.     On July 27. 2010, the Appeal Deciding Officer, Suzanne C. Rainville issued a decision affirming the FONSI and rejecting all appeals.  The Appeal Deciding Officer indicated that her decision was based, in part, on "the fact that the purpose and need for the project was to conduct further site-specific analysis...[and] the District Ranger was not able to address this issue to the degree that he would have liked."  The appeal decision further stated that the further evaluation promised by the USFS made it unnecessary to reverse or remand the FONSI.  The appeal decision also required that the "District Ranger...reanalyze the routes in the project area with a more collaborative public involvement."

85.     The July 2010 appeal decision constitutes the final administrative determination of the U.S. Department of Agriculture and USFS regarding the issues encompassed in the FONSI.

## PRIOR LITIGATION

86.     This lawsuit derives from the Original Action referenced in paragraph 11.

87.     That case was initiated by a *Complaint* (Docket No. 1 in the Original Action) filed on September 2, 2009 by two mining companies (a joint venture and a member of that joint venture) that are not parties to this lawsuit.

88.     On December 11, 2009, the County filed *Valley County's Motion to Intervene* (Docket No. 13 in the Original Action) and *Valley County's Complaint in Intervention* (Docket No. 13-1 in the Original Action).

89.     *Valley County's Complaint in Intervention* adopted each of the counts set out in the Original Action, except for one count that dealt specifically with a notice issue relevant only to the original mining company plaintiffs.

90.    Federal Defendants opposed the motion to intervene, alleging that the Court lacked jurisdiction over *Valley County's Complaint in Intervention*.

91.    Federal Defendants also filed two motions to dismiss the Original Action.

92.    On May 12, 2010, the District Court, Judge Edward J. Lodge, filed a *Memorandum Decision and Order* ("Order") (Docket No. 31 in the Original Action) and a *Judgment* (Docket No. 32 in the Original Action).  Amended versions correcting the caption only were issued on June 10, 2010 in Docket No. 35 ("Amended Order") and Docket No. 36 ("Amended Judgment") in the Original Action.

93.    In the Order, the Court granted one of Federal Defendants' two motions to dismiss.  Specifically, the Court granted the motion to dismiss for lack of subject matter jurisdiction on the ground that the mining companies did not fall within the zone of interests protected by NEPA or the NFMA.  That decision is currently on appeal.

94.    Although granting the motion to dismiss, the Court also granted *Valley County's Motion to Intervene*.

95.    The Court ruled, "For the reasons discussed above, the Court finds that Valley County has standing to proceed with this action." Order at 19; Amended Order at 21.

96.    The Court further ruled, "In this case, if Valley County prevails on claim one, the Court could offer effective relief by ordering the agency to restart the rulemaking process and adequately describe the no action alternative.  The Court therefore finds that claim one is not moot and may proceed." Order at 20; Amended Order at 22 (citations omitted).

97.    The "claim one" referenced in paragraph 96 corresponds to the FIRST CAUSE OF ACTION in this *Complaint* ("Violation of NEPA for failure to adequately describe the No Action Alternative").

98.     The Court further ruled, "The Court finds that claims two and three are ripe and that the Court therefore has jurisdiction to hear these claims." Order at 21-22; Amended Order at 24.

99.     "Claims two and three" referenced in paragraph 98 correspond to the SECOND CAUSE OF ACTION in this *Complaint* ("Violation of NEPA for failure to analyze economic impacts").

100.    The Court further ruled, "The Court therefore finds that Valley County sufficiently raised claims one through three in its administrative appeal and has exhausted these claims." Order at 26; Amended Order at 29.

101.    The Court further ruled that Valley County has demonstrated independent jurisdiction and that Valley County's action could proceed as a separate action in light of the fact that the Court dismissed the Original Action. Order at 26; Amended Order at 29.

102.    In compliance with the Court's ruling described in paragraph 101, Valley County has filed this new *Complaint*.

103.    This *Complaint* is based on the *Complaint* and proposed *Complaint in Intervention* in the Original Action. In order to streamline this litigation, some of the counts included in *Valley County's Complaint in Intervention* in the Original Action have been consolidated or dropped from this *Complaint*. No new counts have been added, but the FONSI of April 26, 2010, the Valley County appeal and the July 27, 2010 decision on appeal have been mentioned for the purpose of demonstrating that they did not moot Valley County's appeal of the ROD.

## FIRST CAUSE OF ACTION

### (Violation of NEPA for failure to adequately describe the No Action Alternative)

104.   The County realleges and incorporates all preceding allegations.

105.   NEPA requires all federal agencies to prepare a detailed Environmental Impact Statement ("EIS") on every proposal for a major federal action significantly affecting the quality of the human environment.  42 U.S.C. § 4332(2)(C).

106.   The NEPA regulations promulgated by the Council on Environmental Quality ("CEQ NEPA Regulations") provide that the alternatives analysis "is the heart of the environmental impact statement . . . sharply defining the issues and providing a clear basis for choice among options by the decisionmaker and the public."  40 C.F.R. § 1502.14.

107.   The CEQ NEPA Regulations required the PNF to "rigorously explore and objectively evaluate all reasonable alternatives" and to address the reasons why any alternatives "were eliminated from detailed study."  40 C.F.R. § 1502.14(a).

108.   The CEQ NEPA Regulations also required the PNF to include a rigorous exploration and objective evaluation of a No Action Alternative.  40 C.F.R. § 1502.14(d).

109.   The No Action Alternative required by NEPA must accurately represent the conditions existing before the proposed federal action to enable the agency and the public to make an informed comparison of the alternatives.

110.   The PNF stated, "The No Action Alternative represents 'no immediate change' from current summer travel management."  ROD at page ROD-22 (Exhibit A).

111.   The statement quoted in paragraph 110 is an accurate statement of what the No Action Alternative should reflect.

112.    In fact, the No Action Alternative did not represent "no immediate change from current summer travel management" because it failed to list or describe existing roads that were open, and in fact used, by motorized vehicles at the time.

113.    The No Action Alternative should, at a minimum, have described those roads included in the 1995 Forest Visitor Map as open to the public (described in paragraphs 44 through46).

114.    In addition to roads included on the 1995 Forest Visitor Map, the PNF should have employed reasonable efforts to identify other roads then physically and/or legally open to the public that were not included on the 1995 Forest Visitor Map, and to include such roads in the No Action Alternative.

115.    Those reasonable efforts should have included, at a minimum, a request for public comment on roads then in use that were not included on the 1995 Forest Visitor Map or the Backroads Maps.

116.    Instead, the No Action Alternative identified as open roads only those roads shown on the 2007 Backroads Map, contending that this reflected "no immediate change" from current conditions.  Draft EIS at page 2-9; Final EIS at page S-16; see also ROD at page ROD-15 (Exhibit A).

117.    The Draft EIS and Final EIS failed to disclose that the Backroads Maps deleted, without any public comment or formal administrative process, roads included in the 1995 Forest Visitor Map.

118.    The Draft EIS and Final EIS failed to disclose that the 1995 Forest Visitor Map itself was an incomplete list of all roads that were then physically and/or legally open.  (See paragraph 46.)

119.    A map entitled "Roads in the Big Creek – Smith Creek Area, Idaho (Draft – roads incomplete)" (referred to herein as the "AIMMCO Roads Map") was prepared by one of the plaintiffs in the Original Action.

120.    The AIMMCO Roads Map was attached as an exhibit to the *Complaint* in the Original Action (Docket No. 1-2 in the Original Action).

121.    The AIMMCO Roads Map was submitted to the Forest Service as an attachment to that plaintiff's administrative appeal of the ROD.

122.    A true and correct copy of the AIMMCO Roads Map (as it appeared as an exhibit to the *Complaint* in the Original Action (Docket No. 1-2 in the Original Action)) is attached hereto as Exhibit D.

123.    Some of the open roads that were omitted from the 2007 Backroads Map and from the No Action Alternative may be identified by comparing the 2007 Backroads Map (Exhibit C) with the AIMMCO Roads Map (Exhibit D).

124.    The AIMMCO Roads Map is not offered as a complete identification of open roads that were omitted from the No Action Alternative. The map does not cover the entire geographic area of the TMP. Nor does the map purport to be a complete description of open roads within the area shown on the map. Instead, the AIMMCO Roads Map is offered solely for illustrative purposes to demonstrate the significant shortcomings of the NEPA process and the sort of information that the Federal Defendants should have been aware of and, in any event, could easily have obtained simply by asking.

125.    In the ROD, the PNF admitted:  "The Forest Service recognizes that there was some misunderstanding regarding the purpose and the enforcement of the *Backroads* Map publication.  Regardless, it was used to determine the initial existing condition when beginning

the travel plan.  I also realize that these roads and trails that do not appear on *Backroads* Maps, but do appear on the 1995 Travel Map are important to the recreating public, and will identify ways to possibly designate some of the routes in the near future.  This will take additional site-specific NEPA, but these roads and trails will be high on the project priority list for funding the analysis." ROD at page ROD-15 (Exhibit A) (emphasis original).

126.    In the ROD, the PNF further admitted:  "The trails leading to Golden Cup Mine [and other named mines] have not been shown open to motorized use since the publishing of the 2000 '*Backroads'* maps – the official travel errata map to the 1995 visitor use map. . . .  No change to this management was proposed during scoping or the DEIS so it was not analyzed under any alternative, but the Forest [Service] realizes that there was a lack of understanding by many locals in the Big Creek and Yellow Pine area about the '*Backroads'* map and its validity. As funding allows, site-specific analysis may be conducted in the area to identify routes for use as recreational trails while avoiding potential environmental impacts." ROD at page ROD-41 (Exhibit A) (emphasis original).

127.    An EIS that is based on a misleading, incomplete, or inaccurate No Action Alternative does not allow the agency or the public to make an informed comparison of the alternatives.

128.    The Draft EIS and Final EIS failed to include as part of the No Action Alternative potentially hundreds of miles of roads within the National Forest then open to public use.  (See AIMMCO Roads Map, attached as Exhibit D.)  Instead, the No Action Alternative falsely treated these roads as if they were closed or nonexistent.

129.    The alternatives analysis was misleading, incomplete, and inaccurate because each alternative was compared to a No Action Alternative that in fact represented a significant change from the actual existing conditions in the National Forest.

130.    The ROD states: "The No Action Alternative represents 'no immediate change' from current summer travel management." ROD at page ROD-22 (Exhibit A). This statement is not accurate. In fact, the No Action Alternative reflects a substantial departure from current conditions.

131.    Pursuant to the ROD, Federal Defendants arbitrarily closed roads that were previously open to the public based on the false contention that the roads had been previously closed.

132.    Suzanne C. Rainville admitted, on pages 15 and 41 of the ROD (see paragraphs 125 and 126), that the No Action Alternative did not accurately depict existing conditions.

133.    Although Suzanne C. Rainville admitted in the ROD that the No Action Alternative did not accurately depict the existing conditions, she failed to correct the misrepresentation in the alternatives analysis in the FEIS before issuing her decision.

134.    The decision of Suzanne C. Rainville to use an alternative analysis for the ROD that contained uncorrected and known misrepresentations was arbitrary, capricious, and an abuse of discretion that is wrong on the merits and a procedural violation of NEPA.

135.    The Appeal Decision admitted that "it was not clear to the public about the current status of several roads and trails in the Yellow Pine/Big Creek area." Appeal Decision at unnumbered page 3 (Exhibit B).

136.    The Appeal Decision admitted that "because the analysis assumed that roads and trails in the Yellow Pine/Big Creek areas have not been available for motorized use due to

previous closures, it is not clear from the record how the potential social and economic impacts of not designating these roads and trails were considered." Appeal Decision at unnumbered page 2 (Exhibit B).

137.    As documented in paragraphs 135 and136, the Appeal Decision admitted that the Final EIS and ROD were based on an alternatives analysis that was premised on an incomplete and inaccurate representation of the status quo and that it was unclear from the record whether all impacts of the closures had been considered.

138.    The omission of open roads from the No Action Alternative meant that neither the public nor the decision-making agencies had all available information with respect to the impact of closure of these roads.

139.    The omission of open roads from the No Action Alternative masked the extent of environmental, social, and economic impact of the federal action and resulted in restricting the scope of analysis undertaken in the NEPA process, as reflected in the following statement from the ROD: "Under this decision, changes in use opportunities vary little from existing condition and do not represent an elimination or massive reduction of any one particular recreational use." ROD at page ROD-21 (Exhibit A).

140.    Unpaved roads that are closed and not maintained or mitigated can cause erosion and sedimentation.

141.    Effective mitigation measures are available that can eliminate or substantially reduce the quantity of sediment from unpaved roads that reaches streams and other public water bodies.

142.    The omission of open roads from the No Action Alternative resulted in the Draft EIS and Final EIS failing to consider whether adverse environmental effects, such as erosion and sedimentation, would result from the closure and non-maintenance of those roads.

143.    The alternatives analysis contained in the Draft EIS and Final EIS does not meet the requirements of NEPA and the CEQ NEPA regulations.

144.    The Appeal Decision did not remand the ROD for the completion of an alternatives analysis consistent with the requirements of the law.

145.    Instead of remanding the ROD for the completion of an alternatives analysis consistent with the requirements of the law, the Appeal Decision (Exhibit B) states, at unnumbered pages 3, 4, 8, and 11, that the inadequate alternatives analysis is not grounds for reversal of the ROD because Defendant Susan C. Rainville committed to engaging in future, additional analysis.

146.    A commitment to engage in future, additional analysis is not a defense to a violation of NEPA.

147.    The failure of the Final EIS to contain an adequate No Action Alternative and its failure to disclose the true status quo of all then existing roads, trails, and areas renders the Final EIS and the ROD "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" in violation of 5 U.S.C. § 706(2)(A), "without observance of procedure required by law" in violation of 5 U.S.C. § 706(2)(D), and a violation of NEPA and the CEQ NEPA Regulations and Guidance.

148.    The failure of the Appeal Decision to remand the ROD, which it admitted was "not clear to the public," for completion of an alternatives analysis consistent with the requirements of the law renders the Appeal Decision "arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law" in violation of 5 U.S.C. § 706(2)(A),

"without observance of procedure required by law" in violation of 5 U.S.C. § 706(2)(D), and a

violation of NEPA and the CEQ NEPA Regulations and Guidance.

149.    The Final EIS, the ROD, and the Appeal Decision should be set aside and this

Court should direct the PNF to restart the PNF travel management planning process using an

accurate and complete No Action Alternative.

## SECOND CAUSE OF ACTION

### (Violation of NEPA for failure to analyze economic impacts)

150.    The County realleges and incorporates all preceding allegations.

151.    The term "human environment" is defined by the CEQ NEPA regulations as

including "the natural and physical environment and the relationship of people with that

environment." 40 C.F.R. § 1508.14.

152.    The CEQ NEPA regulations provide, "When an environmental impact statement

is prepared and economic or social and natural or physical environmental effects are interrelated,

then the environmental impact statement will discuss all of these effects on the human

environment." 40 C.F.R. § 1508.14.

153.    The CEQ NEPA regulations provide, "This means that the significance of an

action must be analyzed in several contexts such as society as a whole (human, national), the

affected region, the affected interests, and the locality." 40 C.F.R. § 1508.27(a).

154.    The road network within the National Forest has been open and utilized by

miners, recreationists, outfitters, hunters, anglers, tourists, students, fire crews, and other

members of the public.

155.   Use of the road network by these persons contributes substantially to the economies of local communities near and within the National Forest. Closure of roads within this road network will adversely impact the local economy by impairing public safety, by eliminating economic activity dependant on public access, and by precluding significant potential new economic development based on recreation, tourism, residential development, and resource extraction.

156.   The effects of the proposed action on the economy of local communities were identified as non-significant issues. Draft EIS at pages 1-17 to 1-18; Final EIS at page 1-15 to 1-16; ROD at page ROD-21 (Exhibit A).

157.   The ROD's economic analysis was limited to an explanation of why the effects of the proposed action on recreational use were not significant and why no further analysis was required. Draft EIS at pages 1-17 to 1-18; Final EIS at page 1-15 to 1-16; ROD at page ROD-21 (Exhibit A).

158.   The economic analysis in the Draft EIS, Final EIS and ROD was limited to impacts arising from recreational use of roads. Draft EIS at pages 1-17 to 1-18; Final EIS at page 1-15 to 1-16; ROD at page ROD-21 (Exhibit A).

159.   The economic analysis in the Draft EIS, Final EIS, and ROD failed to analyze the economic impacts on non-recreational uses within the National Forest.

160.   The exclusion of potentially hundreds of miles of open roads from the No Action Alternative resulted in a significant understatement of the economic effect of the proposed alternative.

161.    The closure of potentially hundreds of miles of roads resulting from the federal action will have a significant effect on the economy resulting from reduced access by visitors and local residents.

162.    The failure of Federal Defendants to adequately analyze the effects on the economy was arbitrary, capricious, and an abuse of discretion that is wrong on the merits, as well as a procedural violation of NEPA.

163.    The failure of the Appeal Decision to remand the ROD for consideration of the effects on the economy was arbitrary, capricious, and an abuse of discretion that is wrong on the merits, as well as a procedural violation of NEPA.

164.    The failure of the Final EIS and the ROD to analyze the effects on the economy renders them "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" in violation of 5 U.S.C. § 706(2)(A), "without observance of procedure required by law" in violation of 5 U.S.C. § 706(2)(D), and a violation of NEPA and the CEQ NEPA Regulations and Guidance.

165.    The failure of the Appeal Decision to remand the ROD for analysis of the effects on the economy renders the Appeal Decision "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" in violation of 5 U.S.C. § 706(2)(A), "without observance of procedure required by law" in violation of 5 U.S.C. § 706(2)(D), and a violation of NEPA and the CEQ NEPA Regulations and Guidance.

166.    The ROD, Final EIS, and Appeal Decision should be set aside and this Court should direct the PNF to restart the PNF travel management planning process using a proper analysis of the economic effects of the federal action.

## REQUEST FOR RELIEF

WHEREFORE, VALLEY COUNTY requests the following relief:

A.     A declaration that the Final EIS, the ROD, and the Appeal Decision are unlawful and invalid.

B.     An order that any new or revised Travel Management Plan be based on an EIS that includes an alternatives analysis consistent with the requirements of federal law, including, but not limited to, a complete, accurate disclosure and representation of the conditions existing before the proposed federal action.

C.     An order that any new or revised Travel Management Plan be based on an EIS that includes a thorough discussion of economic and social impacts of the plan in compliance with NEPA.

D.     An award of attorneys' fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, the Civil Rights Attorney's Fee Awards Act, 42 U.S.C. § 1988, and other applicable law or rule of Court.

E.     Such other relief as this court deems just and proper.

DATED this 19th day of May, 2011.

VALLEY COUNTY

By: _____\s\ Matthew C. Williams_____
    Matthew. C. Williams
    Prosecuting Attorney

By: _____\s\ David R. Lombardi_____
    David R. Lombardi

By: _____\s\ Christopher H. Meyer_____
    Christopher H. Meyer

*Attorneys for Plaintiff*

### INDEX TO EXHIBITS

**Exhibit A**    RECORD OF DECISION (OCT. 3, 2008)

**Exhibit B**    APPEAL DECISION (JAN. 8, 2009)

**Exhibit C**    BACKROADS MAP (2007)

**Exhibit D**    AIMMCO ROADS MAP (NOV. 2008)