## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| VALLEY COUNTY, IDAHO<br><br>    Plaintiff,<br>v.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE, an agency of the United States; TOM VILSACK, in his capacity as Secretary of Agriculture of the United States; UNITED STATES FOREST SERVICE, an agency within the Unites States Forest Department of Agriculture; TOM TIDWELL, in his capacity as Chief of the United States Forest Service; HARVEY FORSGREN, in his capacity as Regional Forester for the Intermountain Region of the United States Forest Service; BRENT L. LARSON, in his capacity as Forest Supervisor of the Caribou-Targhee National Forest; and KEITH LANNOM, in his capacity as Forest Supervisor for the Payette National Forest,<br><br>    Defendants. | Civil Action No.  1:11-cv-233-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |
| IDAHO RECREATION COUNCIL, an Idaho non-profit corporation; CHRIS and LOIS SCHWARZHOFF, husband and wife;<br><br>    Plaintiffs,<br>v.<br><br>UNITED STATES FOREST SERVICE, a federal agency within the Department of Agriculture; SUZANNE C. RAINVILLE, Forest Supervisor, Payette National Forest; and BRANT PETERSEN, District Ranger, Krassel Ranger District, Payette National Forest,<br><br>    Defendants. | Consolidated Case: 1:09-cv-275-BLW |

**Memorandum Decision & Order – page 1**

## INTRODUCTION

The Court has before it cross-motions for summary judgment. The Court heard oral argument on December 11, 2013, and took the motions under advisement.  For the reasons expressed below, the Court will grant each motion in part.  The Court finds that (1) the 2007 EIS and 2008 ROD violate NEPA; (2) the 2010 EA/FONSI does not violate NEPA; and (3) the parties should attempt to reach an agreement on a remedy before submitting that issue to the Court in another round of briefing.  The Court's analysis is set forth below.

## FACTUAL BACKGROUND

This dispute focuses on 972 miles of "unauthorized" roads in the Payette National Forest (PNF).  Valley County argues that the Forest Service has closed these roads without any evaluation of the environmental impacts of closure as required by NEPA.  The Forest Service responds that it has evaluated those environmental impacts and has complied with NEPA.  To resolve this dispute, the Court must first review the history of the Forest Service's management of motorized travel in the PNF.

In 2003, the Forest Plan for the Payette National Forest (PNF) identified a number of concerns related to travel management, including the impacts to wildlife and water quality from motorized travel on unauthorized routes.  The Forest Supervisor, however, decided not to analyze travel management in detail at that time and continued to rely instead on a travel management plan that had been adopted in 1995.

The concerns over travel management became national in scope, and in 2005, the Forest Service issued new travel management regulations.  The new regulations required

**Memorandum Decision & Order – page 2**

each National Forest to designate roads open to motorized vehicle use and prohibit vehicle use off the designated system.  *See* 36 C.F.R § 212.51.

Pursuant to those regulations, the PNF prepared a Final Environmental Impact Statement in 2007 (2007 FEIS) evaluating various options for designating a system of roads and trails in the PNF.  The 2007 EIS, in its discussion of the impacts of roads generally, observes that they "accelerate erosion and deliver sediment to streams." *FSO18334*.  This erosion and sediment delivery "have been identified as a primary source of water quality pollution in many [PNF] watersheds." *FS018556*.  These impacts on water quality and soil productivity "have affected the existing condition of all [Management Areas within the PNF] to varying degrees." *FS018561*.

The PNF contains about 972 miles of "unauthorized" roads.  The 2007 FEIS defines unauthorized roads as "roads that are not part of the National Forest System roads and included in the forest transportation atlas." *FS18401*.  Only non-motorized use is allowed on unauthorized roads, *FS018400-01,* but the Forest Service has no plans to physically block or rehabilitate these roads.  *FS018584*.

The impact from the use of these 972 miles of unauthorized roads was not directly evaluated by the 2007 FEIS.  This absence was explained by the Forest Service in the 2007 FEIS as follows:

> The difficulty with unauthorized roads lies in the fact that the Forest does not have complete information on their level or type of use, condition, or location. Many felt the Forest should implement a complete inventory of these roads before making any travel management decisions. While this was considered, it was not feasible to complete such a task with our existing funding and personnel levels. Furthermore, such an inventory may

**Memorandum Decision & Order – page 3**

> never be complete, as new routes will continue to be created during the inventory process.

FS019673.

Because the Forest Service did not have the budget and personnel to conduct a study of the 972 miles of unauthorized roads, the Forest Service used a proxy to measure the roads' environmental impacts. This proxy methodology is not explained in the 2007 FEIS, but is recounted for the first time in the briefing by the Forest Service in this litigation, where it asserts that it decided

> to exclude detailed information on the location of unauthorized roads from the no-action alternative, but include them in the baseline condition under areas open to cross-country motor vehicle use, [because] . . . the [unauthorized] roads were only being used to the extent that they were being accessed by cross-country motor vehicle travel.

*See Forest Service Brief (Dkt. No. 91-2)* at p. 7. In other words, the Forest Service was using the impacts of open acres as a proxy for the impacts of unauthorized roads. In its Reply Brief, the Forest Service explained this decision in more depth:

> Indeed, using either acres or miles provides a basis for describing the impacts of the no-action and action alternatives. Both indicators evaluate the relative impacts of the motorized use to subwatershed vulnerability, geomorphic integrity, and water quality by management area. FS18562-63. Both types of indicators take into account location by evaluating either acres open to cross-country motorized travel or miles of routes in Riparian Conservation Areas. FS18558. And both types of indicators take into account the relative impact of the presence of an unauthorized road on the landscape by considering the "Total Soil Resource Commitment," and the relative impact of use of unauthorized roads by considering the "Detrimental Soil Disturbance." FS18557. Moreover, using acres open to cross-country motorized travel takes into account motorized travel that occurs off the 972 miles of inventoried, unauthorized roads, including new, user-created "trails across alpine areas, wetlands, steep slopes and other areas with sensitive soils." FS18558.

**Memorandum Decision & Order – page 4**

*See Forest Service Reply Brief (Dkt. No. 104)* at p. 7.

The Forest Service used the 2007 FEIS to determine which then-currently authorized roads should remain open to motorized travel. In conducting that evaluation, the 2007 EIS evaluated a no-action alternative along with four action alternatives. The no-action alternative would make no change to the authorized road designations, and would have left 510,930 acres, approximately one-third of the PNF, open to motorized cross-country travel. Each of the four action alternatives prohibited cross-country motorized travel in the PNF. *FS18445.*

After reviewing the 2007 FEIS, the Forest Supervisor issued a Record of Decision in 2008 (2008 ROD). The 2008 ROD selects an alternative that maintains 317 miles of existing authorized roads as open to motorized travel. *FS19666.* It allows no motorized cross-country travel. *Id.*

There was public criticism of the failure of the 2007 FEIS to evaluate the 972 miles of unauthorized roads and consider them for inclusion as designated roads open to motorized travel. The Forest Service did not consider them because it used a publication known as the *Backroads Map* as a source document for an inventory of roads, and the 972 miles of unauthorized roads was not identified in that publication. *FS19669.* The Forest Supervisor considered these criticisms in the 2008 ROD:

> I also realize that these [unauthorized] roads and trails that do not appear on Backroads Maps, but do appear on the 1995 Travel Map are important to the recreating public, and will identify ways to possibly designate some of the routes in the near future. This will take additional site-specific NEPA, but these roads and trails will be high on the project priority list for funding the analysis.

**Memorandum Decision & Order – page 5**

*FS19669.* Pursuant to this commitment, the Forest Service initiated an environmental assessment of motorized vehicle route designation in the Big Creek - Yellow Pine area. The PNF is divided into thirteen Management Areas, and this region comprises Management Areas 12 and 13.

In response to the criticisms of the 2007 FEIS, the Forest Service decided to identify and study in depth the unauthorized roads in Management Areas 12 and 13. As a preliminary step, the Forest Service assembled two interdisciplinary teams to conduct travel assessments for these areas. The travel assessments, released in 2009, included an inventory of area roads, including unauthorized roads, and a partial survey of their use by the public. *FS033295; FS033114*. The travel assessments also considered the general impact of roads on soil and water, vegetation, fisheries, wildlife, recreation opportunities, and cultural resources. The types of data collected included the road distance, number of stream crossings, erosion points, drainage features, width and gradient of the roadbed, presence of vegetation in the roadbed, and type of access. *FS033099.*

These travel assessments conducted the very study of unauthorized roads that the Forest Service had concluded it was unable to undertake in the 2007 FEIS. Ultimately, the travel assessments made a recommendation of decommissioning or designating (as authorized for motorized travel) each of the inventoried roads. *FS033195-96; FS033374-75.*

The assessments recommended decommissioning the majority of roads. The recommendations were based on inventory data on the number and quality of stream

crossing, the propensity for erosion, and the Forest Service's assessment of each road's recreational value.

Based on these travel assessments, the Forest Service published the Big Creek-Yellow Pine Travel Plan Environmental Assessment in 2010 ("2010 EA"). The 2010 EA no action alternative was defined as continued management of the area "as specified in the [2008 ROD]" – that is, closing Management Areas 12 and 13 to off-road motorized use. *FS033512*. The EA also included two alternatives that would have designated either 13.5 miles of currently undesignated roads for motorized use, in Alternative B, or 26.6 miles, in Alternative C. *FS033513-14*.

The EA study team rejected from detailed consideration an alternative that would have adopted the large scale closures recommended in the travel assessments because, though the closures "would have best met many of the resource concerns for fisheries and water quality," the travel assessments did "did not take into consideration the public sentiment" in favor of maintaining existing routes. *FS033511*.

Shortly after the EA was released, also in April 2010, the Forest Supervisor issued a "Big Creek Yellow Pine Travel Plan Project Decision Notice and Finding of No Significant Impact" (FONSI). It adopted the no action alternative from the EA, opting for the status quo created by the 2008 ROD. The Forest Supervisor rejected alternatives B and C on the grounds that the additional route designation without offsetting mitigation would likely degrade fisheries through opening additional stream crossings and trails in riparian areas. *FS033686-88*. However, the Supervisor indicated that he would continue to consider designation of some roads in the future, stating that "I would like to proceed

**Memorandum Decision & Order – page 7**

from here by re-analyzing the routes in the project area with more collaborative public involvement. This will allow the Forest to consider offsetting mitigations such as decommissioning of unused routes." *FS033685*.

## LITIGATION BACKGROUND

Plaintiffs Idaho Recreation Council (IRC) and Chris and Lois Schwarzhoff filed their complaint on June 9, 2009 in what was then a separate case (1:09-cv-00275-BLW) before Idaho District Court Judge Edward Lodge. After the Forest Service issued its 2010 EA/FONSI, those Plaintiffs filed an Amended Complaint. Dkt. 26, 1:09-cv-00275-BLW.

The Amended Complaint alleges that the Forest Service, in promulgating the travel management policy in the Big Creek - Yellow Pine area, violated the Administrative Procedures Act ("APA"); the National Environmental Policy Act ("NEPA"), and the National Forest Management Act ("NFMA").

Valley County filed a complaint under the instant case number on May 19, 2011. It similarly alleges that defendants' actions violate the APA and NEPA but does not allege a violation of the NFMA.

Valley County moved to consolidate the two cases on July 7, 2011. The Court granted the motion and designated *Valley County v. United States* as the lead case. In early 2012, the parties filed cross-motions for summary judgment.

The Court rejected the plaintiffs' arguments and awarded summary judgment for the Forest Service on all claims. Valley County responded with a motion to alter or amend the Judgment, arguing that (1) the Forest Service had never filed a motion for summary judgment against it; (2) that its briefing was solely in support of IRC's

**Memorandum Decision & Order – page 8**

arguments and did not raise other arguments that Valley County had pled in its separate complaint; and (3) that it had reserved the right to raise these additional issues in a footnote in its brief that the Court had overlooked.

The Court agreed and allowed Valley County to challenge the issues it had raised in its complaint and that were not resolved in the Court's decision. The parties have now filed cross-motions for summary judgment on these reserved issues.

## LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. In an administrative record review case, a court may direct summary judgment based upon whether the evidence in the administrative record permitted the agency to make the challenged decision. *Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1017 (9th Cir 2012) (en banc). Under the APA, the reviewing court must set aside the agency's decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). A decision is arbitrary and capricious if the agency has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. *O'Keeffe's, Inc. v. U.S. Consumer Product Safety Comm'n*, 92 F.3d 940, 942 (9th Cir. 1996). An agency action is also arbitrary and capricious if the agency fails to articulate a satisfactory explanation for its

**Memorandum Decision & Order – page 9**

action including a rational connection between the facts found and the choice made. *Id.* Finally, an agency must set forth clearly the grounds on which it acted. *See Atchison T. & S.F. Ry. v. Wichita Bd. of Trade,* 412 U.S. 800, 807 (1973).

## ANALYSIS

Valley County argues that the 2007 FEIS and 2008 ROD violate the National Environmental Policy Act (NEPA) because they fail to disclose and evaluate the impacts of 972 miles of unauthorized roads. Valley County also argues that these flaws similarly infected a later environmental study – the 2010 Environmental Assessment and Finding of No Significant Impact (2010 EA/FONSI) – that was tiered to the 2007 FEIS. Valley County argues that the 2010 EA/FONSI also violates NEPA and must be set aside.

The Court turns first to the 2010 EA/FONSI. An EA is a "concise public document" that "[b]riefly provide[s] sufficient evidence and analysis for determining whether to prepare an [EIS] or a finding of no significant impact [FONSI]." 40 C.F.R. § 1508.9. It must include a "brief discussion" of "the environmental impacts of the proposed action and alternatives." 40 C.F.R. § 1508.9(b). The Court applies the "rule of reason," in evaluating whether an environmental assessment contains a "reasonably thorough discussion of the significant aspects of probable environmental consequences." *Neighbors of Cuddy Mt. v. U.S. Forest Serv.*, 137 F.3d 1372, 1376 (9th Cir. 1998). NEPA requires that the agency take a "hard look" at the likely effects of the proposed action. *Center for Biological Diversity v Salazar*, 695 F.3d 893, 916 (9th Cir. 2012). Taking a "hard look" includes "considering all foreseeable direct and indirect impacts."

**Memorandum Decision & Order – page 10**

*Id.* at 916-17.

The 2010 EA/FONSI evaluated the environmental impacts of 37 miles of unauthorized roads in Management Areas 12 and 13.  *See Appendix 1 (Dkt. No. 100).*  It concluded that adding additional miles of authorized roads would impede restoration of water quality and adversely affect several fisheries.  *FS033686-88*.  The 2010 EA/FONSI was based on assessments that measured the distance of the roads, the number of stream crossings, erosion points, drainage features, width and gradient of the roadbed, presence of vegetation in the roadbed, and type of access. *FS0330996*.  The assessments conducted in 2009 reported that the watershed condition indicator (WCI) for many of the streams in the area were "functioning at risk" (FR) or "functioning at unacceptable risk" (FUR).  As the Administrative Record shows, motorized vehicle use, particularly on roads with stream crossings or that run along streams, damages watershed conditions.  *FS033567*.  With regard to the 37 miles of existing unauthorized roads, the EA observed that "resource conditions continue to degrade" because these unauthorized roads "have been receiving use [but] there has been no official or formal maintenance."  *FS033574*.

The 2010 EA/FONSI was a response to criticism of the 2007 FEIS that it failed to specifically address the impacts of unauthorized roads in the PNF.  By conducting an in-depth analysis of those impacts within Management Areas 12 and 13, the 2010 EA/FONSI took the "hard look" that NEPA requires – at least the "hard look" within Management Areas 12 and 13 that was required.  Thus, assuming *arguendo* that Valley County retains the right to make this NEPA challenge to the 2010 EA/FONSI, the Court finds that the challenge must be rejected.

**Memorandum Decision & Order – page 11**

The 2007 FEIS and 2008 ROD, however, lack the focus that is found in the 2010 EA/FONSI.  The 2007 FEIS and 2008 ROD rely on a proxy methodology rather than a direct study of the impacts of the use of unauthorized roads.  As explained above, the Forest Service's proxy methodology is not found in the NEPA documents but was revealed for the first time in this litigation.  While interpretations that are "first articulated in a legal brief [are] not categorically unworthy of deference," the Forest Service's litigation explanation cannot be a "post hoc rationalization advanced . . . to defend past agency action against attack."  Id. at 1120 (internal quotations and citations omitted).  "[T]he courts may not accept . . . counsel's post hoc rationalizations for agency action."  Motor Vehicle Mfrs. Ass'n, 463 U.S. at 50, 103 S.Ct. 2856.

The NEPA documents must contain some type of explanation for the agency's proxy methodology.  *Lands Council v. McNair*, 629 F.3d 1070, 1081 (9th Cir.2010).  Even where the agency "explains its decision with less than ideal clarity, a reviewing court will not upset the decision on that account if the agency's path may reasonably be discerned."  *Crickon v. Thomas*, 579 F.3d 978, 982 (9th Cir.2009).  The Court must defer to the agency's expertise in reviewing the agency's explanation of its methodology.  *Earth Island Inst. v. Hogarth,* 494 F.3d 757, 763-64 (9th Cir.2007).

The issue is whether the 2007 FEIS and the 2008 ROD explain the Forest Service's methodology of using the impacts of use of open acres (that is, acres open to cross-country motor vehicle use) as a proxy for the impacts of use on miles of existing unauthorized roads.  For example, the Forest Service could have explained how impacts from open acres translate to impacts from unauthorized roads and shown how many miles

**Memorandum Decision & Order – page 12**

of roads were within those open acres. That is only one example, and the Court would defer to the Forest Service expertise in selecting and explaining its proxy methodology. *See Or. Natural Desert Ass'n v. Bureau of Land Mgmt.,* 625 F.3d 1092, 1120-21 (9th Cir. 2008) (holding that court "would certainly accord the [agency] great deference, recognizing that NEPA's requisite hard look does not require adherence to a particular analytic protocol"). But when no explanation whatsoever is proffered by the agency, the Court "cannot defer to a void." *Id.* at 1121.

Looking at the NEPA documents, they contain no correlation between road miles and open acres. For example, focusing on Management Area 7, there is no way to tell whether any portion of the 13.1 miles of unauthorized roads in that Management Area are contained within its 31,460 open acres. More importantly, there is no explanation as to how the impacts of use on open acres translate to the impacts of use of unauthorized roads.

For these reasons, the Court finds that the 2007 FEIS and the 2008 ROD violate NEPA. Although the 2010 EA/FONSI is tiered to the 2007 FEIS, the 2010 EA/FONSI corrected the flaws in the 2007 FEIS by specifically identifying the unauthorized roads in MA 12 and MA 13 and evaluating their environmental impacts, as discussed above. Thus, the Court will grant summary judgment to the Forest Service as to MA 12 and MA 13.

With regard to the other eleven Management Areas, the parties agreed that if the Court found a NEPA violation, the Court should not proceed to impose a remedy without

**Memorandum Decision & Order – page 13**

further briefing.  The Court agrees with that approach, and will give some guidance to direct counsel in the next phase of this litigation.

First, there may be reasons to reconsider the scope of the Court's earlier ruling that Valley County has standing in this case.  From the briefing on the present motions, it appears that only Management Areas 7, 8, 12 and 13 lie within the boundaries of Valley County.  *See Valley County Statement of Facts (Dkt. No. 85-1)* at ¶ 6.  Having found no NEPA violation as to MA 12 and MA 13, only MA 7 and MA 8 are still at issue of these four Management Areas.  If Valley County's standing is limited to those areas – a point the Court expresses no opinion on at this time – the remedy may be limited to those areas.  This is an issue counsel may explore in the next phase of briefing.

Second, the parties should make every effort to reach an agreement on remedies.  The Court's options are quite limited; in contrast, the parties can use their creativity to craft a solution far better than anything the Court could impose.

Finally, the Court will direct the Clerk to set a telephone conference with the Court's law clerk Dave Metcalf to discuss a briefing schedule.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion for summary judgment filed by Valley County (docket no. 85) is GRANTED IN PART AND DENIED IN PART.  It is granted to the extent it seeks a ruling that the 2007 FEIS and 2008 ROD violate NEPA.  It is denied in all other respects.

IT IS FURTHER ORDERED, that the motion for summary judgment filed by the Forest Service (docket no. 91) is GRANTED IN PART AND DENIED IN PART.  It is granted to the extent it seeks a ruling that the 2010 EA/FONSI does not violate NEPA.  It is denied in all other respects.

IT IS FURTHER ORDERED, that the parties shall contact the Court's Clerk Jamie Gearhart ([jamie_gearhart@id.uscourts.gov](mailto:jamie_gearhart@id.uscourts.gov) or 208-334-9021) to set up a telephone conference with Staff Attorney David Metcalf to set a briefing schedule on remedy issues.

DATED: February 11, 2014

_____
B. Lynn Winmill
Chief Judge
United States District Court